UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Federal Deposit Insurance Corporation,<br>as receiver for Irwin Union Bank, F.S.B., | )<br>)<br>) | |
| Plaintiff, | )<br>) | 2: 10-cv-1146 JWS |
| vs. | )<br>) | ORDER AND OPINION |
| Jay Dabba and Nisha Dabba,<br>husband and wife, | )<br>)<br>) | [Motion at docket 37] |
| Defendants. | )<br>) | |

## I.  MOTION PRESENTED

At docket 37, the Federal Deposit Insurance Corporation, as receiver for Irwin Union Bank, F.S.B. ("FDIC-R") moves for summary judgment against defendants Jay and Nisha Dabba ("Defendants").  The motion is supported by a Statement of Facts at docket 38 and the affidavit of Mindy Albright at docket 39.  Defendants' opposition is at docket 40, and their Controverting Statement of Facts is at docket 41.  FDIC-R replies at docket 42.  Oral argument was requested but would not assist the court.

## II.  BACKGROUND

The relevant facts are largely undisputed.  FDIC-R's predecessor Irwin-Union Bank made a $455,000 loan to Defendants pursuant to a business loan agreement

dated May 31, 2005. Defendants' debt was evidenced by a promissory note and secured by a deed of trust on a tract of land which Defendants purchased with the loan proceeds. On June 1, 2007, Defendants executed a new promissory note which continued the repayment date in the original promissory note from June 1, 2007, to June 1, 2009. Defendants defaulted by failing to make the required payments. As a consequence, FDIC-R sued Defendants seeking to recover the principal balance remaining due, together with accrued interest, late charges, costs, and attorneys' fees. According to the Affidavit of Mindy Albright submitted in support of FDIC-R's motion, after taking into account all payments made and offsets due to them, Defendants owed the following amounts to FDIC-R as of October 31, 2012: Principal of $424,505.57; accrued interest of $116,256.37, late charges of $3,051.84, and a processing/release fee of $95.00.[1]

### III. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.[2] The moving party has the burden of showing that there is no genuine dispute as to any material fact.[3] The moving party need not present evidence; it need only point out the lack of any genuine dispute as to material fact.[4] Once the moving party has met this burden, the non-moving party must

---

[1] Affidavit of Mindy Albright, doc. 39.

[2] Fed. R. Civ. P. 56(a).

[3] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[4] *Id.* at 323-25.

set forth evidence of specific facts showing the existence of a genuine issue for trial.[5] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[6] However, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[7]

## IV. DISCUSSION

Defendants oppose the motion on the grounds that there are disputed issues of material fact. To be precise, Defendants point to two specific issues: "The FDIC-R fails to establish . . . the rate and amount of the applicable interest owed under the promissory note. Further, Defendants are entitled to a reduction or set-off in the FDIC-R's damages based upon the fair market value of the [land securing the deed of trust.]"[8] Each issue is discussed below.

### A. Interest

FDIC-R relies on the loan documents and the affidavit of Mindy Albright to establish the rate and amount of interest. The rate of interest is clearly established in the loan documents which provide for interest at a rate equal to the Wall Street Journal's published prime rate ["Prime Rate"] plus one percent which increases to the

---

[5]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

[6]*Id.* at 255.

[7]*Id.* at 248-9.

[8]Doc. 40 at p. 2.

Prime Rate plus four percent in the event of default.[9] Ms. Albright's affidavit indicates that she is the Asset Manager for FDIC-R's loan servicing agent. Ms. Albright avers that, based on her personal knowledge and the records kept under her supervision in the ordinary course of business, the amount of interest accrued on the loan as of October 31, 2012, is $116,256.37.[10] Defendants do not attack Ms. Albright's qualifications or the validity of the underlying records. Rather, they complain that FDIC-R has not stated the date of default (the date when the interest rate would increase) nor set out specific calculations of the interest accrued. Defendants point to no alternative calculation nor any other evidence to demonstrate error in Ms. Albright's calculation, save this statement: "How the interest increased by approximately $80,000 in just over 2 years [the period from the time suit was filed until FDIC-R moved for summary judgment] raises serious questions about how the interest was calculated and whether the FDIC-R properly calculated the accrued interest."[11]

Defendants do not dispute that the principal owed is, as alleged by FDIC-R, $424,505.57. According to the complaint, the accrued interest as of May 24, 2010, was $27,869.97, and interest was accruing at that time at the rate of 7.25% per annum or $85.491 per day. Ms. Albright's affidavit says the accrued interest was $116,256.37 as of October 31, 2012. Thus, interest increased by $88,386.40, over a period of 2 years, 5 months and 7 days, a period of 892 days. At a rate of $85.491/day the increase would be $76,257.97. Of course, the interest rate was variable, so in theory the amount

---

[9] Promissory Note, doc. 1-1 at p. 9.

[10] Affidavit of Mindy Albright at doc. 39.

[11] Doc. 40 at p. 5.

might be either more or less than that. However, without further explanation, the difference of more than $12,000 casts doubt on the accuracy of Ms. Albright's interest calculation.

To support their position, Defendants cite *U. S. Bank of Arizona v. Allyn.*[12] There, a lender sued a borrower seeking to recover what was due on a promissory note. The motion sought interest calculated at 5%, but it was supported by a promissory note reciting an interest rate of 4%. The borrower failed to oppose the motion which was then granted by the trial court. Thereafter, the borrower sought a new trial based on the rate discrepancy. The motion was denied. On appeal, the appellate court noted the discrepancy and held that the trial court was obligated to assure that summary judgment was appropriate. FDIC-R contends *Allyn* is not in point, and that because they have presented evidence of the amount of interest due, the burden shifted to Defendants to present contrary evidence. Although FDIC-R is correct that the burden did shift, Defendants' contention about the unexplained large increase in interest owed over a period of 892 days is sufficient evidence to support an inference that Ms. Albright's calculation is erroneous. Thus, *Allyn* is instructive. Drawing a reasonable inference based on the available facts in the record in favor of Defendants, as it must on summary judgment, the court concludes that the amount of interest owed by Defendants has not been established as a matter of law.

---

[12] 167 Ariz. 191, 805 P.2d 1012 (App. Ct. 1990).

**B.  Set-Off**

Defendants do not contend that the business loan involved in this lawsuit is subject to an anti-deficiency provision.  Nevertheless, they assert that they will be harmed if the case at bar is pursued to judgment in advance of a foreclosure sale.  As defendants see it, "by failing to do a trustee sale before initiating its suit on the note, the FDIC-R has deprived the Defendants the opportunity to contest whether the price paid at an eventual trustee sale of the land truly reflects the fair market value of the property."[13]  As FDIC-R correctly points out there is nothing in the promissory note which would require it to conduct a foreclosure sale prior to filing suit.

Defendants cite no authority to support the conclusion that without the holding of a foreclosure sale first, they will have no ability to assure that they are credited with the fair market value of the property once there is a foreclosure.  Indeed, FDIC-R correctly asserts that Arizona law provides them with a mechanism to pursue their concern, A.R.S. 33-814.[14]

### V.  CONCLUSION AND DIRECTION TO COUNSEL

For the reasons above the motion at docket 37 is **GRANTED in part and DENIED in part** as follows: FDIC-R may pursue this case to judgment without first conducting a foreclosure sale; FDIC-R shall recover principal of $424,505.57, late charges of $3,051.84, and a processing/release fee of $95.00 from Defendants, but the amount of accrued interest must remain for future determination.

---

[13]Doc. 40 at p. 6.

[14]*See Resolution Trust Corp. v. Freeway Land Inv* 798 F.Supp. 593, 596-97 (D. Ariz. 1992).

The court strongly recommends that counsel confer in an effort to stipulate to the amount of accrued interest, for the cost of a trial on that topic would be significant, and the amount should not be that difficult to establish in a candid discussion.

If closing papers are not sooner filed, the parties shall file a joint status report advising the court what remains to be done before a trial date may be set and advising of a proposed schedule.

DATED this 4th day of January 2013.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE