**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| **Federal Deposit Insurance Corporation,** **as receiver for Union Bank, F.S.B.,** | ) ) ) | |
| **Plaintiff,** | ) ) | **2:10-cv-1146 JWS** |
| **vs.** | ) ) | **ORDER AND OPINION** |
| **Jay Dabba and Nisha Dabba,** **husband and wife,** | ) ) ) | **[Motion at docket 49]** |
| **Defendants.** | ) ) ) | |

**I.  MOTION PRESENTED**

At docket 49, defendants Jay and Nisha Dabba ("Defendants") move for entry of judgment against themselves in the principal amount owed on the promissory note involved in this litigation plus interest and certain additional costs without any determination of the amount of credit due from a trustee's foreclosure sale of the real property used to secure the promissory note.  At docket 52, the Federal Deposit Insurance Corporation, as receiver for Irwin Union Bank, F.S.B. ("FDIC-R") opposes the motion and requests instead that a judgment be entered against Defendant which reflects credit for the amount received at a trustee's sale of the property.  Defendants reply at docket 53. Oral argument was requested but would not assist the court.

## II.  BACKGROUND

FDIC-R's predecessor Irwin-Union Bank loaned $455,000 to Defendants pursuant to a business loan agreement dated May 31, 2005.  The debt was evidenced by a promissory note and secured by a deed of trust on a tract of land which Defendants purchased with the loan proceeds.  On June 1, 2007, Defendants executed a new promissory note which continued the repayment date in the original promissory note from June 1, 2007, to June 1, 2009.  Defendants defaulted by failing to make the required payments.  As a consequence, FDIC-R sued Defendants seeking to recover the principal balance remaining due, together with accrued interest, late charges, costs, and attorneys' fees.

FDIC-R commenced this litigation without first conducting a non-judicial foreclosure sale.  Earlier, FDIC-R moved for summary judgment seeking the full amount of the principal owed on the promissory note, unpaid interest, late charges, a processing fee, and costs and attorneys' fees.  Defendants opposed the motion on two grounds.  They argued that the amount of interest was disputed and that they were entitled to a reduction from the sum owed to FDIC-R in the amount of the fair market value of the land securing the loan.[1]  As Defendants put it:

> Normally, if the FDIC-R had moved to non-judicially foreclose on the property, the FDIC-R could have then sought a deficiency judgment against the Defendants, and the Defendants would be entitled to a determination by the Court of the fair market value of the foreclosed upon property, which would act as [a reduction] on the amounts still owed under the promissory note.  *See* Ariz. Rev. Stat § 33-814(A). * * *

_____

[1]Doc. 40.

Here, by suing on the note directly and avoiding a foreclosure on the deed
of trust, the FDIC-R has attempted to circumvent a determination of the
fair market value of the vacant land securing the FDIC-R's loan.  * * *  [B]y
failing to do a trustee sale before initiating its suit on the note, the FDIC-R
has deprived the Defendants the opportunity to contest whether the price
paid at an eventual trustee sale of the land truly reflects the fair market
property value of the property.[2]

The court's ruling on the motion for summary judgment concluded that

Defendants were correct to contend that the amount of interest was in dispute, but

permitted FDIC-R to proceed with the litigation.[3]  That order also established the

amount owed by Defendants with the exception of the amount of interest which the

court noted "must remain for future determination."[4]  Thereafter the parties stipulated to

the amount of interest owed, and the stipulation was approved by the court.[5]

Recognizing that the only remaining issue was the one flagged by

Defendants–determination of the fair market value of the property–the court issued an

order setting out a briefing schedule for resolution of that issue.[6]  The order filed on April

4, 2013, required Defendants to file a motion for summary judgment on the fair market

value issue within 28 days and provided for filing a response and a reply.  Rather than

file a motion asking the court to determine the fair market value, Defendants filed the

motion at docket 49, which asks the court to enter judgment without addressing the fair

---

[2]*Id.* at pp. 5-6.

[3]Doc. 43.

[4]*Id.* at p. 6.

[5]Docs. 46 and 47.

[6]Doc. 48.

market value of the property–the very issue which Defendants had identified as of central significance in their earlier motion papers.

In the meantime, FDIC-R arranged for a foreclosure sale which was conducted on January 29, 2013.   The sale was conducted in the customary manner, and the property was sold for $63,751.00.  Of this, $2,739.60 represented the costs of sale, leaving a net payment to FDIC-R of $61,011.40.[7]

### III.  DISCUSSION

Defendants elected not to present any evidence of the fair market value of the property when they failed to respond to the court's order requiring them to present their position on that issue.  In FDIC-R's present motion papers, there is persuasive evidence that the fair market value at the time of the foreclosure sale was $63,751.00.  That was the price fetched at a properly noticed foreclosure sale from an independent third-party bidder.  After payment of the costs of sale, the net was $61,011.41.  Based on the procedural history of the case, it would seem that FDIC-R is entitled to a deficiency judgment against Debtors in the amount owed, less $61,011.41.  Defendants, however, contend that instead of entering a judgment to that effect, the court should enter judgment against them in the full amount owed with no reduction for the fair market value of the property.

Defendants cite no authority which would support following the unorthodox procedure they ask the court to use.  The only reason given to support their request is that they wish to pursue a state law claim in Arizona State Court.  They assert their

---

[7] *See,* doc. 52-1.

claim would be waived unless this court declines to determine the fair market value of the property by entering judgment against them for the full amount owed. Defendants say that amount consists of $424,505.57 in principal, interest of $116,256.37, late charges of $3,501.84, and a processing fee of $95.00, for a total of $544,358.78.[8]

This court is unable to reconcile Defendants' request with the procedure contemplated by applicable Arizona law.[9]  Moreover, the court entertains serious concerns about multiplying litigation. If Defendants have a claim relating to the determination of fair market value or the conduct of the foreclosure sale, they could and should have presented it to this court for determination.

Defendants also complain that there is insufficient evidence to support the conclusion that the purchase price at the trustee's sale represents the fair market value of the property. This argument is unavailing, because Defendants were afforded an opportunity to brief the fair market value issue and chose not to do so. They neither filed the motion they were directed to file by the court, nor included any evidence respecting fair market value in the motion at docket 50. In their reply, Defendants argue that they had a contract for the sale of the property for $95,000. The contract appears to have been executed on July 23, 2012, and contemplated closing no later than September 30, 2012.[10]  Simply ignoring the fact that there is no authenticating affidavit for the contract provided by Defendants, it is noteworthy that this evidence was

---

[8]Doc. 49 at p.2.

[9]A.R.S. § 33-814(A); *Valley Nat'l Bank of Arizona v. Kohlhase*, 897 P.2d 738, 741 (Ariz. Ct. App. 1995).

[10]Doc. 52-1.

available to Defendants months before their motion on the fair market value issue was due on or about May 2, 2013.[11]  Defendants' failure to timely present the evidence cannot be ignored.  The court is satisfied that the actual sale price at the trustee's sale is sufficient to establish the fair market value of the property as of the date of the sale.

## IV.  CONCLUSION AND ORDER FOR FURTHER ACTION

For the reasons above, the motion at docket 49 is **DENIED,** and the court hereby determines that FDIC-R is entitled to a deficiency judgment against Defendants in the amount of $544,358.78, less the net proceeds from the trustee's sale of $61,011.40, plus taxable costs, plus any attorneys' fees which may be awarded.

Wherefore, **IT IS ORDERED**:

(1)  FDIC-R shall move for attorneys' fees within 14 days from this order, and Defendants shall respond within 14 days from the motion's filing.  FDIC-R may reply within 7 days from the filing of Defendants' response.  FDIC-R may apply to tax costs.

(2) FDIC-R shall submit a proposed form of judgment within 14 days from this order (the amount of attorneys' fees and costs to be left blank in the form).  If Defendants find fault with the *form* of the proposed judgment, they shall respond stating their concerns within seven (7) days from the date the proposed form of judgment is filed.

DATED this 2nd day of July 2013.

_____/S/_____
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

---

[11]*See* order at doc. 48.